**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **DISCOVER PROPERTY & CASUALTY INSURANCE COMPANY AND THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT,** | § § § § § | |
| **Plaintiffs,** | § § | |
| **v.** | § § | **CIVIL ACTION NO. 1:21-cv-00487-RP** |
| **BLUE BELL CREAMERIES USA, INC., BLUE BELL CREAMERIES, L.P., BLUE BELL CREAMERIES, INC., JOHN W. BARNHILL, JR., GREG A. BRIDGES, RICHARD DICKSON, PAUL A. EHLERT, JIM E. KRUSE, PAUL W. KRUSE, W.J. RANKIN, HOWARD W. KRUSE, PATRICIA I. RYAN, AND DOROTHY MCLEOD MACINERNEY,** | § § § § § § § § § § § | **JURY DEMAND** |
| **Defendants.** | § § | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION AND MEMORANDUM OF
LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

I. INTRODUCTION AND SUMMARY ........................................................................ 1

II. ARGUMENTS & AUTHORITIES ......................................................................... 2

   A.   The Officers and Directors are not "insureds." ............................................... 2

   B.   The alleged damages were not caused by an "occurrence." ................................. 5

      1.   Claims for damages caused by willful or intentional misconduct are not covered under the Policies, even if the insured did not expect or intend to cause the injury. ............. 5

      2.   Defendants rely on inapplicable case law. .................................................. 7

      3.   Cases involving allegations of ordinary negligence do not apply. ............................. 9

   C.   The Shareholder Suit does not seek damages "because of bodily injury." ...................... 10

      1.   The Complaint seeks recovery for the financial consequences of the Listeria outbreak, not for bodily injury. ....................................................................... 10

      2.   Any bodily injuries suffered by consumers do not trigger a duty to defend the Shareholder Suit. .................................................................................... 12

         a.   Defendants' reliance on government cost-recovery cases is misguided. ................ 13

         b.   Defendants' reliance on cellular headset cases is misguided. ................................. 16

   D.   The expected or intended injury exclusion applies. ........................................... 17

   E.   Other exclusions. ................................................................................. 19

III. CONCLUSION AND PRAYER .......................................................................... 19

Plaintiffs Discover Property & Casualty Insurance Company and the Travelers Indemnity Company of Connecticut ("Travelers") file this Response to Defendants' Motion and Memorandum of Law in Support of Motion for Summary Judgment ("Defendants' Motion") and respectfully show the Court as follows:

## I.
## INTRODUCTION AND SUMMARY

In this case, Defendants seek to expand the scope of coverage provided by third-party commercial general liability policies issued to Blue Bell[1] to cover its own claim against its Officers and Directors for their knowing and willful breach of their fiduciary duties to Blue Bell —the corporate insured. The parties have filed cross-motions for summary judgment because the relevant facts and evidence are undisputed, and the interpretation of the Policies—and whether they cover the claims in the Shareholder Suit—is a question of law for this Court.

Defendants' claim for coverage should fail, and Defendants' Motion should be denied, because the Shareholder Suit (Dkt. 29) was not brought by a third party seeking to hold any insured liable for damages that are potentially covered by the Policies. Instead, Blue Bell—the named insured—seeks to recover damages from its own Officers and Directors for the financial losses caused by their breaches of fiduciary duties owed to Blue Bell. To hold that the insured's affirmative claims are covered under the insured's own *liability* policy would turn the concept of corporate liability coverage on its head.

Furthermore, the Complaint does not assert claims for damages "because of bodily injury," caused by an "occurrence," defined as an "accident," as required to trigger coverage under the Policies. Rather, the Complaint seeks to recover purely financial losses sustained by Blue Bell, which were caused by its Officers' and Directors' knowing and willful conduct that

---

[1] Unless otherwise stated, capitalized terms have the meaning assigned in Travelers' Cross-Motion for Summary Judgment ("Travelers' Motion") (Dkt. 34).

resulted in a *Listeria* outbreak and a total product recall. Intentional, non-accidental losses and claims for economic damages sustained by the insured are not covered by the Policies.

For each of these independent reasons, discussed in detail below, Defendants' Motion should be denied, and Travelers' Motion should be granted.

## II.
## ARGUMENTS & AUTHORITIES

### A.    The Officers and Directors are not "insureds."

Defendants' claim fails for the fundamental reason that no "insured" is alleged to be liable for damages. The Shareholder Suit is not a third-party action brought against an insured; it is an action brought *on behalf of* the named insured—Blue Bell Creameries USA, Inc. ("Blue Bell" or "Company")—to recover financial losses allegedly sustained by the insured at the hands of its Officers and Directors. Because no third-party claim has been asserted against any insured, there is no coverage, and Defendants' Motion must be denied.

Defendants argue that the Officers and Directors are insureds because the definition of "insured" under the Policies includes Blue Bell's executive officers and directors,[2] but that oversimplifies the analysis. The Policies state that the "insured" can include officers and directors, but "*only* with respect to their duties as [Blue Bell's] officers or directors."[3] Here, the Officers and Directors were sued for *breaching* their duties to Blue Bell, not for their actions in furtherance of those duties.[4] No Texas court has ever held that officers and directors sued in a shareholder derivative action for breaching their fiduciary duties to the insured corporation are "insureds" under that corporation's CGL policy. Affording coverage under these circumstances would turn the concept of corporate insurance on its head. *See Milazo v. Gulf Ins. Co.*, 224 Cal.

---

[2] Defendants' Motion at pp. 3, 8 (Dkt. 32).
[3] Ex. 2. to Travelers' Motion at Travelers_0022 (emphasis added) (Dkt. 30-1).
[4] Complaint ¶¶ 146-150 (Dkt. 29).

App. 3d 1528, 1539 (Cal. Ct. App. 1990) ("To hold that a partner could be covered under a partnership general liability policy for his acts *against* the very business organization that gives him his status as an insured person would turn the concept of partnership coverage on its head."). Thus, courts around the country have held that for purposes of liability coverage, a corporate officer or director is not acting "with respect to" his or her duties as an officer or director, and is not an insured, when he or she is *breaching* those duties. *See Am. States Ins. Co. v. Synod of the Russian Orthodox Church Outside of Russia*, 170 F. App'x 869, 872 n.16 (5th Cir. 2006) (stating that a church monk could not have been acting with respect to his duties as clergy while engaging in sexual molestation and, therefore, was not an "insured" under the church's liability policy); *Haggerty v. Fed. Ins. Co.*, 32 F. App'x 845, 848-49 (9th Cir. 2002) (holding that a corporate officer could not have been acting with respect to his duties while acting against the interests of the corporation and, therefore, was not an "insured" under the corporation's liability policy); *Farr v. Farm Bureau Ins. Co. of Neb.*, 61 F.3d 677, 681-82 (8th Cir. 1995) (same).

This case is no different. The Shareholder Suit is a derivative action brought on behalf of Blue Bell (the insured) against its Officers and Directors for knowingly and willfully breaching their fiduciary duties, causing Blue Bell to sustain "catastrophic" financial losses that posed an "existential threat to the Company."[5] As in *Synod*, *Haggerty*, and *Farr*, the Officers and Directors cannot be said to have been acting "with respect to their duties" as officers and directors of Blue Bell while they were knowingly and willfully breaching those duties, causing Blue Bell to sustain losses. Therefore, the Officers and Directors are not insureds for purposes of the Shareholder Suit, and there is no coverage under the Policies.

Furthermore, finding liability coverage for the Shareholder Suit also would be contrary to the purpose of a third-party commercial liability policy. Defendants gloss over the fact that "if

---

[5] Complaint at p. 2 & ¶¶ 39, 69, 112, 144, 148 (Dkt. 29).

successful," the Officers and Directors "would be 'legally obligated to pay … damages' … to Blue Bell," the insured.[6] But, as explained in Travelers' Cross-Motion, finding coverage here would improperly convert the *third-party liability* coverage afforded by the Policies into *first-party loss* coverage, which is not provided.[7] As Defendants themselves acknowledge, the duty to defend must be determined by reference to "the *third-party plaintiff's* pleadings."[8] Here, there is no third-party plaintiff, only the insured.

Additionally, providing coverage for the Shareholder Suit would enhance, rather than minimize, the "moral hazard" of insurance that courts have cautioned against. *See Trinity Universal Ins. v. Cowan*, 945 S.W.2d 819, 828 (Tex. 1997) (stating that the ability to shift the cost of wrongdoing to an insurer is a "moral hazard" of insurance because it "inevitably tends to reduce an insured's incentives to maximize loss-prevention measures"); *Martin Marietta Materials Sw., Ltd. v. St. Paul Guardian Ins. Co.*, 145 F. Supp. 2d 794, 799 (N.D. Tex. 2001) (same). Here, a corporate insured is not seeking to use its CGL policy to protect itself from the cost of liability to third parties as a result of an accident or occurrence. Rather, it is seeking to shield its officers and directors from the consequences of their knowing and willful breaches of fiduciary duty. If CGL coverage exists under these circumstances, it would enhance the moral hazard of insurance by reducing officers' and directors' incentive to act in the company's best interest (*i.e.* to act as fiduciaries).

---

[6] Defendants' Motion at p. 8 (Dkt. 32).
[7] *See* Travelers' Motion at pp. 5-7.
[8] *See* Defendants' Motion at p. 7 (quoting *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006)) (Dkt. 32).

**B.      The alleged damages were not caused by an "occurrence."**

1.      *Claims for damages caused by willful or intentional misconduct are not covered under the Policies, even if the insured did not expect or intend to cause the injury.*

There also is no coverage because the Policies only apply to otherwise covered bodily injury claims caused by an "occurrence," defined as an "accident,"[9] and the Shareholder Suit only alleges financial losses caused by the Officers' and Directors' knowing and willful conduct.[10] Such claims are not covered under the Policies because knowing and willful misconduct is not an "occurrence." *See HVAW v. American Motorists Ins. Co.*, No. 97-10850, 149 F.3d 1175, 1998 WL 413803, at *2-3 (5th Cir. June 17, 1998) (holding allegations that the insured "knowingly engaged in a complex conspiracy" to defraud the plaintiffs did not allege an occurrence); *Butler & Binion v. Hartford Lloyd's Ins. Co.*, 957 S.W.2d 566, 568-69 (Tex. App.—Houston [14th Dist.] 1995, no pet.) (holding allegations of intentional misconduct do not allege an occurrence).

Defendants argue that the Complaint alleges an occurrence, despite allegations of knowing and willful misconduct, because the Officers and Directors did not intend to cause the contamination of Blue Bell's products and its consumers' injuries.[11] This argument is contrary to Texas law, which holds that a claim based on knowing and intentional wrongdoing—as pled in the Complaint—is not an accident, and thus not covered, even if the defendant did not expect or intend to cause the resulting injury. *See Cowan*, 945 S.W.2d at 827-28 (holding that whether the insured intended to cause the plaintiff's mental anguish was "of no consequence" to whether his actions were an accident); *Argonaut Sw. Ins. Co. v. Maupin*, 500 S.W.2d 633, 635 (Tex. 1973) (holding there was no occurrence when the insured's "acts were voluntary and intentional, even

---

[9] Ex. 2. to Travelers' Motion at Travelers_0022, 0028 (Dkt. 30-1).
[10] Defendants admit that the Complaint alleges that Blue Bell's damages were caused by knowing and willful misconduct. Defendants' Motion at p. 13 (Dkt. 32); *see also* Travelers' Motion at pp.10-11 (citing the numerous allegations of intentional conduct against the Officers and Directors) (Dkt. 34).
[11] Defendants' Motion at pp. 13-16 (Dkt. 32).

though the result or injury may have been unexpected, unforeseen and unintended."). Under Texas law, if the damages were a "natural result of the act, the result was not caused by accident even though that result may have been unexpected, unforeseen and unintended." *Admiral Ins. Co. v. Little Big Inch Pipeline Co, Inc.*, 523 F. Supp. 2d 524, 531 (W.D. Tex. 2007) (quoting *Maupin*, 500 S.W.2d at 635); *see Meridian Oil Production, Inc. v. Hartford Accident & Indem. Co.*, 27 F.3d 150, 152 (5th Cir. 1994) (while "Texas courts afford coverage for fortuitous damages," coverage is denied where the "damages are the natural and probable consequence of intentional conduct").

There was no occurrence here because the *Listeria* outbreak and the resulting financial harm to Blue Bell was the natural and probable result of the Officers' and Directors' knowing and willful misconduct. According to the Complaint, the Officers and Directors knew about ongoing health and safety violations, including years of uncorrected contamination and risk of contamination, yet they continued to produce and sell Blue Bell's products without taking remedial action.[12] The Complaint alleges that the Officers and Directors breached their fiduciary duties by failing to comply with state and federal health standards, including the obligation to "monitor for, avoid and remediate contamination and conditions that expose the Company and its products to the risk of contamination."[13] Even if the Officers and Directors did not intend their willful disregard of the known contamination to cause any harm, it was the natural result of their allegedly intentional conduct. Therefore, there is no allegation of an "occurrence" and no coverage under the Policies. *See Meridian Oil*, 27 F.3d at 152; *Maupin*, 500 S.W.2d at 635; *Admiral Ins.*, 523 F. Supp. 2d at 531.

---

[12] Complaint ¶¶ 48-68, 96, 112, 121, 144, 148 (Dkt. 29); *see also* Travelers' Motion at pp. 10-11 (Dkt. 34).
[13] Complaint ¶ 39; *see also id.* ¶¶ 26-38 (describing the FDA regulations and guidelines the Officers and Directors were charged with following) (Dkt. 29).

The Fifth Circuit's opinion in *Meridian Oil* is instructive. In *Meridian Oil*, the court held that contamination of a freshwater aquifer caused by an oil and gas operator's failure to follow industry standards was not an accident because the contamination followed inevitably and predictably from the oil company's failure to take adequate protections. 27 F.3d at 151-152. As Defendants do here, the insured in *Meridian Oil* argued that the contamination was a covered occurrence because it did not expect or intend the resulting injury. *Id.* at 152. But the Fifth Circuit rejected this argument, explaining that while "the extent of monetary recovery for the damages … might have been unexpected," the water contamination "was a necessary companion event" to the oil and gas operator's knowing failure to take protective action against pollution. *Id.*

The Northern District of Texas reached a similar conclusion in *Martin Marietta*, where a property owner intentionally diverted a waterway, which injured downstream users of the waterway by reducing the flow of water. 145 F.Supp.2d at 796. The court held that the petition did not allege an occurrence because "the natural and predictable result of diverting or damming a river is reduction of downstream waters, which could foreseeably harm downstream users." *Id.* at 799. It was irrelevant that the insured had no "specific intent to cause injury." *Id.* at 800.

The same is true here—even if the Officers and Directors did not intend to cause the *Listeria* outbreak or the resulting harm, their conduct was not an occurrence because the injuries were the natural and predictable result of disregarding years of positive test results for *Listeria* and repeated violations of state and federal health standards.

2.       *Defendants rely on inapplicable case law.*

Defendants alternatively argue that the Complaint alleges an occurrence because the Officers and Directors are alleged to have "primarily" engaged in willful *failures to act*, *e.g.*, they "failed to supervise company operations," failed to "investigate potential hazards," and

failed to "govern the management of the Company."[14] Defendants argue that such knowing and willful failures to act are "consistent with" negligent behavior and, therefore, should be considered accidental.

In support of this argument, Defendants cite *State Farm Gen. Ins. Co. v. White*, 955 S.W.2d 474 (Tex. App.—Austin 1997, no pet) and *McCreary v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n*, 758 So. 2d 692 (Fla. Ct. App. 1994), which are inapposite. In *White*, an insured homeowner was sued for failing to report child abuse, and the issue before the court was whether the allegations triggered the policy's "intentional injury" exclusion—not whether there was an "occurrence." 955 S.W.2d at 475. The court held that the claim was not clearly within the exclusion because the homeowner was not alleged to have intended to cause child abuse, and such intent could not be inferred from the homeowners' failure to report past abuse. *Id.* at 476-77. The court's holding has no application here because it did not address whether the alleged conduct constituted an accident or occurrence.

*McCreary* is an application of Florida law that directly conflicts with Texas law and, therefore, is not authoritative. In *McCreary*, a pair of homeowners were sued for knowingly permitting their dogs to run free and threaten their neighbors, and their homeowners' insurer refused to defend the case. The court held that under controlling Florida case law there was no occurrence (defined in the policy, as here, to mean an "accident"). 758 So. 2d at 694. However, under controlling Florida law, the term "accident" includes "damages or injuries that are neither expected nor intended from the viewpoint of the insured." *Id.* (quoting *State Farm Fire & Cas. Co. v. CTC Dev. Corp.*, 720 So. 2d 1072, 1075 (Fla. 1998)). Under Florida law, unlike under Texas law, whether the harm is the natural and probable consequence or foreseeable is not relevant to the determination of whether there was an accident. *See U.S. Fire Ins. Co. v. J.S.U.B.,*

---

[14] Defendants' Motion at p. 15 (Dkt. 32).

*Inc.*, 979 So. 2d 871, 883 (Fla. 2007) (citing *CTC Dev. Corp.*, 720 So.2d at 1074–77.) The Texas Supreme Court has held that whether the defendant intended to cause the plaintiff's injury is irrelevant to whether it was caused by an accident or occurrence. *Maupin*, 500 S.W.2d at 635 (holding that voluntary and intentional acts are not an accident, "even though the result or injury may have been unexpected, unforeseen and unintended"); *Meridian Oil*, 27 F.3d at 152 (5th Cir. 1994) (Under Texas law, there is no coverage where the "damages are the natural and probable consequence of intentional conduct").

Under controlling Texas law, because the Officers' and Directors' alleged knowing and intentional conduct naturally and predictably caused the *Listeria* outbreak, there was no occurrence, and therefore, there is no coverage under the Policies.

3.   *Cases involving allegations of ordinary negligence do not apply.*

The remaining cases that Defendants cite—including *Mass. Bonding & Ins. Co. v. Orkin Exterminating Co.*, 416 S.W2d 396 (Tex. 1967), *Westchester Fire Ins. Co. v. Gulf Coast Rod, Reel & Gun Club*, 64 S.W.3d 609 (Tex. App.—Houston [1st Dist.] 2001, no pet.), and *Hallman v. Allstate Ins. Co.*, 114 S.W.3d 656 (Tex. App.—Dallas 2003), *rev'd on other grounds*, 159 S.W.3d 640 (2005)—are inapplicable because they included claims for damages caused by ordinary negligence. *See Orkin*, 416 S.W2d at 400 (finding coverage because the jury found the defendant liable for negligence, not gross negligence, which was within the definition of an "accident"); *Westchester*, 64 S.W.3d at 610-11 (finding coverage because the petition included allegations of ordinary negligence); *Hallman*, 114 S.W.3d at 661-62 (finding coverage because the insured's ordinary negligence caused the plaintiff's injury, not the insured's knowing and intentional misconduct); *see also Cowan*, 95 S.W.2d at 827 (stating that *Orkin* is inapplicable to cases alleging only intentional conduct, citing *Maupin*, 945 at 634-35); *Hallman*, 114 S.W.3d at 661 (explaining that if the injury were a natural and probable result of knowing or intentional

misconduct, as in *Meridian Oil* and *Martin Marietta*, there would be no occurrence and, therefore, no coverage).

The Officers and Directors are alleged to have caused Blue Bell's damages through willful and intentional misconduct, not ordinary negligence. Therefore, cases like *Orkin*, *Westchester*, and *Hallman* do not apply.

**C.    The Shareholder Suit does not seek damages "because of bodily injury."**

  1.    *The Complaint seeks recovery for the financial consequences of the* Listeria *outbreak, not for bodily injury.*

Even if the Officers and Directors were insureds, and an accident or occurrence caused Blue Bell's damages, there still is no coverage and no duty to defend because the alleged damages are not "because of bodily injury."[15] It is undisputed that the Complaint in the Shareholder Suit only seeks damages for the "financial injury" that Blue Bell suffered because of the *Listeria* outbreak and its consequences.[16]

Defendants nevertheless argue that Blue Bell's damages constitute "damages because of bodily injury" because the *Listeria* outbreak caused bodily injury to some of Blue Bell's consumers.[17] But the Complaint does not seek to recover damages on account of those injuries, either directly or indirectly. Indeed, as Defendants admit, the consumers who suffered bodily injuries filed separate lawsuits against Blue Bell that are not at issue.[18] While the Complaint refers to bodily injuries in discussing the effects of the *Listeria* outbreak, the damages it seeks are not because of those injuries—they are because of the broader financial impact of the outbreak and product recalls. There is no coverage under the Policies for such claims. *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Ready Pac Foods, Inc.*, 782 F. Supp. 2d 1047, 1057

---

[15] *See* Ex. 2 to Travelers' Motion at Travelers_0015 (Dkt. 30-1).
[16] *See* Defendants' Motion at p. 9-10 (Dkt. 32).
[17] Defendants' Motion at p. 9 (Dkt. 32).
[18] Defendants' Motion at p. 1 (Dkt. 32). When Blue Bell tendered these lawsuits to Travelers, Travelers defended under a reservation of rights. *See* Travelers' Motion at p. 14 and fn. 43 (Dkt. 34).

(C.D. Cal. 2011) (rejecting the argument that lost profits caused by a decline in patronage after an e-coli outbreak was a claim for damages because of bodily injury even where the outbreak also caused bodily injuries).

Defendants cite *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1 (Tex. 2007) for the proposition that "economic loss can also meet a policy requirement that harm occur 'because of property damages,'"[19] but the holding in *Lamar Homes* is not relevant. In *Lamar Homes*, a liability insurer relied on the economic loss rule to argue that damage stemming from a breach of contract is not a claim for property damage. *Id.* at 12. In rejecting this argument, the Texas Supreme Court explained that the economic loss rule does not apply because it "is a liability defense or remedies doctrine, not a test for insurance coverage." *Id.* at 8. This holding has no application here because, as another case from this district has explained, *Lamar Homes* "does not hold, as Defendants seem to suggest, that economic damages in and of themselves can satisfy the 'property damage' requirement of an insurance contract; nor did it disturb the requirement that the petition must allege either bodily injury or physical damage." *Nat'l Fire Ins. of Hartford v. C. Hodges & Assocs., PLLC*, 825 F. Supp. 2d 792, 798–99 (W.D. Tex. 2011).

In property damage cases, which Defendants argue apply by analogy, economic losses are only covered if they were directly caused by property damage. Thus, in *Mid-Continent Cas. Co. v. Academy Dev., Inc.*, No. H-08-0021, 2010 WL 3489355 (S.D. Tex. Aug. 24, 2010), cited by Defendants, the plaintiff in the underlying lawsuit sued the insured defendant (a property developer) for failing to disclose to buyers that a nearby lake was poorly constructed and was leaking water, and the plaintiffs sought to recover damages for the diminished value of their homes, which they alleged was "caused by the lakes leaking water onto their property." *Id.* at *5-6. Because the petition expressly alleged that the loss of value was caused by property damage,

---

[19] Defendants' Motion at pp. 11-12 (Dkt. 32).

the court held that it was "sufficient to allege property damage per the terms of the policies" for purposes of the duty to defend. *Id.* at *6.

In contrast here, the Complaint in the Shareholder Suit does not allege that Blue Bell's financial injury was caused in any way by bodily injury. Instead, the Complaint alleges that Blue Bell's financial injury was caused by the "company-wide contamination" that the Officers and Directors failed to remedy or prevent.[20] The Complaint alleges that ███████████████████ ████████████████████████████████████████[21] It goes on to detail ████████████ ████████████████████████████████████████████████████████ ████[22] The Complaint further alleges that ██████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████[23] None of these financial losses are alleged to have been caused by anyone's bodily injury, and equally important, recovery of the losses sought in the Complaint will do nothing to address or remedy anyone's bodily injury. Under these facts, finding a duty to defend would grossly "expand[] coverage of the policy so as to provide coverage for almost any liability where bodily injury is a factor." *See Ready Pac Foods, Inc.*, 782 F. Supp. 2d at 1057.

2.    *Any bodily injuries suffered by consumers do not trigger a duty to defend the Shareholder Suit.*

The only allegation in the Shareholder Suit that connects bodily injury with the conduct of the Officers and Directors is the allegation that, "[a]s a result of Defendants' conduct, Blue

---

[20] *See* Complaint ¶¶ 69-86 (Dkt. 29); *see also* Travelers' Motion at p. 13 (Dkt. 34).
[21] Complaint ¶ 71 (Dkt. 29).
[22] Complaint ¶¶ 75-76 (Dkt. 29).
[23] Complaint ¶ 77 (Dkt. 29).

Bell has been exposed to numerous lawsuits brought by injured parties."[24] But the Complaint does not seek to recover any damages based on the cost to care for or treat any injured consumers. It does not even seek to recover the cost to settle or defend any lawsuits. Instead, the Complaint seeks to recover ███████████████████████████████████████████████ ████████████████████████████████████████████████████████.[25] These allegations are controlling when considering the duty to defend—the Court cannot "look outside the pleadings, or imagine factual scenarios which might trigger coverage." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997).

Even if a bodily injury claim could be implied from the reference to consumer lawsuits (which it cannot), the alleged damages still would not be "damages because of bodily injury" because damages sought to reimburse an underlying plaintiff for the cost of resolving a separate lawsuit are not recoverable under a CGL policy. *See Preau v. St. Paul Fire & Marine Ins. Co.*, 645 F.3d 293, 297 (5th Cir. 2011) (holding that damages to reimburse the underlying plaintiff for its cost to settle a bodily injury lawsuit were not damages for bodily injury); *Fox Elec. I, Ltd. v. Amerisure Ins. Co.*, No. 4:05-CV-118-Y, 2006 WL 8438294, at *4 (N.D. Tex. Mar. 21, 2006) (holding that a claim to recover damages owed by the underlying plaintiff for property damages alleged against it in a lawsuit was not a claim for damages because of property damage).

    a.    <u>Defendants' reliance on government cost-recovery cases is misguided.</u>

The cases Defendants cite to the contrary are inapposite. First, Defendants cite the Fifth Circuit's unpublished disposition in *Scottsdale Ins. Co. v. Nat'l Shooting Sports Found., Inc.*, No. 99-31046, 2000 WL 1029091, 226 F.3d 642 (5th Cir. July 11, 2000) (per curiam), claiming it stands for the proposition that a purely economic injury may be covered if it "flows from" or

---

[24] Defendants' Motion at p. 9 (citing the Complaint at ¶ 87) (Dkt. 32).
[25] *See* Complaint ¶¶ 69-86, 142-150 (Dkt. 29).

has a causal relationship with another person's bodily injury.[26] This is a mischaracterization. In *Scottsdale*, the City of New Orleans sued a sport-shooting foundation to recover the cost of "increased emergency medical care" and other costs arising from "bodily injuries…caused by handguns." 2000 WL 1029091, at *1. The Fifth Circuit held that the insurer had a duty to defend the foundation in that case, not because the alleged economic loss was causally related to bodily injuries, but because the policy's definition of "bodily injury" coverage included "damages claimed by any person or organization for care, loss of services, or death resulting at any time from the bodily injury." *Id.* at *2 & n.3. Because the claim sought to recover costs for the care and treatment of persons who suffered bodily injury, there was potential coverage under the policy, and the insurer had a duty to defend. *Id.* at *2.

Defendants also cite the Seventh Circuit's opinion in *Cincinnati Ins. C. v. H.D. Smith, L.L.C.*, 829 F.3d 771 (7th Cir. 2016) for the proposition that a mere causal connection with a bodily injury is all that is required.[27] Again, this is a mischaracterization. In *H.D. Smith*, the State of West Virginia sued a pharmaceutical distributor to recover the cost of "caring for drug-addicted West Virginians who suffer drug-related injuries and cannot pay for their own care." 829 F.3d at 773. As in *Scottsdale*, the policy defined "bodily injury" coverage to include "damages claimed by any person or organization for care, loss of services or death resulting at any time from the bodily injury," and the court held that the insurer had a duty to defend the distributor because the pleadings sought damages for the cost of providing care to the plaintiff's citizens because of bodily injury. *Id.* at 773, 774. The court analogized it to a mother who spent money caring for an injured child. *Id.* at 774. The court did *not* hold that any causal relationship with other's bodily injury is sufficient to trigger coverage, as Defendants suggest.

---

[26] Defendants' Motion at pp. 9-10 (Dkt. 32).
[27] Defendants' Motion at p. 10 (Dkt. 32).

Very recently, the Supreme Court of Delaware discussed *H.D. Smith* and made clear that an economic loss that merely relates to bodily injury is not sufficient—the loss or damage must be an "immediate and direct result" of bodily injury. In *Ace Am. Ins. Co. v. Rite Aid Corp.*, No. 339, 2022 WL 90652 (Del. Jan. 10, 2022), counties in Ohio sued a drug store chain to recover the increased cost of responding to the opioid epidemic. *Id.* at *5. The complaint sought to recover damages for the increased financial burden on the health care and criminal justice systems in general and expressly disclaimed any claim for damages for the care and treatment of any individuals. *Id.* Because the claims did not seek any bodily injury damages, either directly or derivatively, the claims did not seek damages "because of" bodily injury and did not trigger a duty to defend. *Id.* at *6.

In its analysis, *Rite Aid* distinguished *H.D. Smith* as an example where the underlying plaintiff *derivatively* sought to recover for another's bodily injuries. *See id.* at *11. The plaintiff in *H.D. Smith* sought to recover the cost of treating its injured citizens, and the claims were dependent upon proof of bodily injuries. That was in contrast to the plaintiffs in *Rite Aid*, whose claims were based on economic loss caused by the defendants and the opioid epidemic in general. *Id.* The court explained that the insurer could only be liable for the economic costs "if the harm was the immediate and direct result" of someone's bodily injury. *Id.* That the underlying case would not entail proof of which individuals were injured, what treatment those individuals received, and what the cost was of that treatment was fatal to Rite Aid's assertion that the claims for which it sought insurance were because of bodily injury. *Id.* at *10.

Likewise, here, there are no allegations that Blue Bell paid any costs to care for injured consumers. The Shareholder Suit will not involve evidence of who was injured, what their injuries were, or what treatment they may have received. Instead, as discussed above, the only

damages sought are for Blue Bell's financial losses caused by its Officers' and Directors' breaches of their fiduciary duties, ███████████████████████████████████████████ ████████████████████████████████████████████.[28] As further explained above, even if it could be said that some of the damages sought from the Officers and Directors would reimburse Blue Bell for costs it incurred to settle or pay judgments to injured consumers in separate bodily injury lawsuits, under the holdings in *Fox Electric, Preau*, and *Rite Aid*, those damages would be too far removed from the bodily injury to constitute damages "because of" bodily injury.

b.   <u>Defendants' reliance on cellular headset cases is misguided</u>.

Defendants also rely on a series of class-action products liability lawsuits brought by consumers to recover the cost of headsets needed to protect them from harmful exposure to radio frequency radiation.[29] In each case, the plaintiffs who filed suit were the actual consumers who purchased the defendant's product and claimed to have sustained a "biological" or bodily injury as a result. *See Samsung Elecs. Am., Inc. v. Fed. Ins. Co.*, 202 S.W.3d 372, 375 (Tex. App.— Dallas 2006), *aff'd*, 268 S.W.3d 506 (Tex. 2008); *Ericsson, Inc. v. St. Paul Fire & Marine Ins. Co.*, 423 F. Supp. 2d 587, 589 (N.D. Tex. 2006); *Voicestream Wireless Corp. v. Fed. Ins. Co.*, 112 F. App'x 553, 555 (9th Cir. 2004); *Motorola, Inc. v. Assoc. Indem. Corp.*, 878 So. 2d 824, 827-28 (La. Ct. App. 2004); *see also Zurich American Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 489 (Tex. 2008). The plaintiffs sought to recover the cost to acquire headsets to protect them from further injury, but the underlying factual basis for the lawsuits was that the defendant sold them a product that caused them direct bodily injury, and the plaintiffs sought to recover damages stemming directly from that injury. *See id.*

---

[28] *See* Complaint ¶¶ 69-86 (Dkt. 29).
[29] *See* Defendants' Motion at pp. 10-11 (Dkt. 32).

Here, the plaintiff (Blue Bell, through one of its shareholders) does not and cannot claim to have sustained bodily injury of any kind. Nor does the relief sought in the Shareholder Suit directly stem from bodily injury. This distinction is critical, as illustrated by the Texas Supreme Court's opinion in *Zurich American Ins. Co. v. Nokia, Inc.,* which Defendants fail to address. In *Nokia*, the court recognized that a complaint that sought *only* to recover the cost of headsets likely would not seek damages because of bodily injury. *Id.* at 494. But, the court concluded that the duty to defend was triggered in that case because the complaint sought to recover damages because of bodily injury *in addition to* the cost of headsets. *Id.* (emphasizing that the complaints "also asserted that the plaintiffs have been injured and seek damages based on their physical exposure to radiation").

The court's reasoning in *Nokia* shows that in the cellular headset context under Texas law, there is only potential coverage if the plaintiffs seek to recover damages because of bodily injuries in addition to their claims for reimbursement for headsets (*i.e.* economic losses). Here, any recovery by Blue Bell would be solely for economic losses, not damages because of bodily injury.

## D.      The expected or intended injury exclusion applies.

For the reasons stated above, Defendants have failed to establish that there is coverage under the terms of the Policies. Therefore, the Court need not consider whether any of the exclusions in the Policies apply.[30] However, out of an abundance of caution, Travelers briefly addresses Defendants' argument that the "expected or intended injury" exclusion does not apply. As explained below, Defendants have failed to cite a single case standing for the proposition that

---

[30] Defendants must first establish that there is coverage under the Policies' insuring language, which they have not done, before the burden shifts to Travelers to prove the applicability of an exclusion. *Gilbert Texas Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 124 (Tex. 2010) ("Initially, the insured has the burden of establishing coverage under the terms of the policy.").

the "expected or intended injury" exclusion would not apply here. And, to the contrary, a Texas court of appeals held in a case directly on point that the "expected or intended injury" exclusion barred coverage in a suit alleging only intentional conduct. *Butler & Binion*, 957 S.W.2d at 568-69.

To argue the exclusion is inapplicable, Defendants impermissibly read the word "expected" out of the Policies. The Policies exclude from coverage bodily injury that is "*expected* or intended from the standpoint of the insured."[31] Relying on the Texas Supreme Court's holding in *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828 (Tex. 2009), which construes a *different* exclusion, Defendants erroneously conclude that the exclusion in the Policies requires the insured to intend the injury.

In *Tanner*, the court construed an "intentional injury" exclusion in an automobile policy excluding coverage for "property damage or bodily injury *caused intentionally by* or at the direction of an insured …." *Id.* at 831 (emphasis added). The court focused its interpretation on the exclusion's requirement of "intentional damage, not just intentional conduct." *Id.* at 829. The court's interpretation of a different exclusion is of no relevance here.

While Defendants cite a case addressing the proper jury charge for the "expected or intended injury" exclusion contained in the Policy, they omit the language addressing the "expected" injury portion of the charge: "Recovery will be barred only if [the insured] intended [the] injury, *or if his injury was expected … because [the insured] knew that the injury was highly probable because it was the natural and expected result of [the insured's] actions.*" *Mid-Continent Cas. Co. v. BFH Mining, Ltd.*, No. H-14-0849, 2015 WL 5178118, at *2 (S.D. Tex. Sept. 3, 2015) (emphasis added). Defendants' citation to *Gulf Chemical & Metallurgical Corp. v. Associated Metals & Minerals Corp.*, 1 F.3d 365 (5th Cir. 1993) is also inapplicable. The only

---

[31] Ex. 2. to Travelers' Motion at Travelers_0015 (Dkt. 30-1) (emphasis added).

issue before the court in *Gulf Chemical* was whether the insured's expectation that a claim would be filed against it was sufficient to fall within the exclusion, an issue not present here. *Id*. at 369-70.

**E.    Other exclusions.**

Defendants are not seeking coverage for any "personal and advertising injury," making the exclusions for "Personal and Advertising Injury" under Coverage A and the exclusion for Knowing Violation of Right of Another" under Coverage B inapplicable.[32]

Travelers' other defenses to coverage, including the Policies' exclusions for "contractual liability" and "recall of products," and failure to mitigate, are only relevant if the Court denies Travelers' Motion, seeking judgment as a matter of law that there is no duty to defend and for the same reasons, no duty to indemnify. Should that occur, after the Officers' and Directors' liability to Blue Bell has been finally determined, the issue of indemnity will be ripe for determination—including whether the Policies' terms or exclusions apply to extinguish or limit any duty to indemnify.

**III.**
**CONCLUSION AND PRAYER**

Defendants have failed to meet their burden to prove the Shareholder Suit is covered under the Policies. The Shareholder Suit does not seek to hold any "insured liable to pay damages because of bodily injury" caused by an "occurrence," but instead seeks to hold the Officers and Directors liable to the named insured—Blue Bell—for financial losses caused by their knowing and willful breaches of their fiduciary duties to Blue Bell. Therefore, Defendants' Motion for Summary Judgment should be denied, and Travelers' Cross-Motion for Summary Judgment should be granted.

---

[32] *See* Defendants' Motion at p. 19; *see also* Ex. 2 to Travelers' Motion at Travelers_0019 (Dkt. 30-1).

Respectfully submitted,

By: */s/Courtney Ervin*

Courtney Ervin
*Attorney-in-Charge*
Texas Bar No. 24050571
cervin@hicks-thomas.com
J. Stephen Barrick
Texas Bar No. 00796168
sbarrick@hicks-thomas.com
Amanda Goldstein
Texas Bar No. 24102067
agoldstein@hicks-thomas.com

**HICKS THOMAS LLP**
700 Louisiana St., Suite 2300
Houston, Texas 77002
Telephone: 713.547.9100
Facsimile: 713.547.9150

**OF COUNSEL:**
James R. Old, Jr.
Texas Bar No. 15242500
jold@hicks-thomas.com
**HICKS THOMAS LLP**
111 Congress Avenue, Suite 1010
Austin, Texas 78701
Telephone: 512-827-7990
Facsimile: 409-419-1733

**ATTORNEYS FOR PLAINTIFFS
DISCOVER PROPERTY & CASUALTY
INSURANCE COMPANY AND THE
TRAVELERS INDEMNITY COMPANY
OF CONNECTICUT**

## CERTIFICATE OF SERVICE

I certify that on January 21, 2022, a copy of this instrument was served on counsel of record as listed below either via the Court's ECF noticing system or via US First Class Mail, postage prepaid, in accordance with the Federal Rules of Civil Procedure.

Douglas A. Daniels
Texas Bar No. 00793579
**DANIELS & TREDENNICK, PLLC**
6363 Woodway Dr., Suite 700
Houston, Texas 77057
Telephone: 713-917-0024
doug.daniels@dtlawyers.com

Timothy W. Burns
(admitted pro hac vice)
TBurns@bbblawllp.com
Jesse J. Bair
(admitted pro hac vice)
JBair@bbblawllp.com
**BURNS BOWEN BAIR LLP**
10 East Doty Street, Suite 600
Madison, WI 53703
Telephone: (608) 286-2303

**ATTORNEYS FOR BLUE BELL CREAMERIES USA, INC., BLUE BELL CREAMERIES, L.P., BLUE BELL CREAMERIES, INC., JOHN W. BARNHILL, JR., GREG A. BRIDGES, RICHARD DICKSON, PAUL A. EHLERT, JIM E. KRUSE, PAUL W. KRUSE, W.J. RANKIN, HOWARD W. KRUSE, PATRICIA I. RYAN, AND DOROTHY MCLEOD MACINERNEY**