FILED

August 01, 2023

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____
klw

DEPUTY

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

FILED

July 11, 2023

Lyle W. Cayce
Clerk

————————

No. 22-50842

————————

Discover Property & Casualty Insurance Company; The
Travelers Indemnity Company of Connecticut,

*Plaintiffs—Appellees*,

*versus*

Blue Bell Creameries USA, Incorporated; Blue Bell
Creameries, L.P.; Blue Bell Creameries, Incorporated;
John W. Barnhill, Jr.; Greg A. Bridges; Richard
Dickson; Paul A. Ehlert; Jim E. Kruse; Paul W. Kruse; W.
J. Rankin; Howard W. Kruse; Patricia I. Ryan; Dorothy
McCleod MacInerney,

*Defendants—Appellants*.

————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:21-CV-487 RP

————————————————————

Before King, Smith, and Elrod, *Circuit Judges*.

J U D G M E N T

This cause was considered on the record on appeal and the briefs on
file.

No. 22-50842

IT IS ORDERED and ADJUDGED that the judgment of the District Court is AFFIRMED.

IT IS FURTHER ORDERED that each party to bear own costs pay to  the costs on appeal to be taxed by the Clerk of this Court.



**Certified as a true copy and issued**
**as the mandate on Aug 02, 2023**

**Attest:**

**Clerk, U.S. Court of Appeals, Fifth Circuit**

# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 11, 2023

Lyle W. Cayce
Clerk

---

No. 22-50842

---

Discover Property & Casualty Insurance Company; The
Travelers Indemnity Company of Connecticut,

*Plaintiffs—Appellees*,

*versus*

Blue Bell Creameries USA, Incorporated; Blue Bell
Creameries, L.P.; Blue Bell Creameries, Incorporated;
John W. Barnhill, Jr.; Greg A. Bridges; Richard
Dickson; Paul A. Ehlert; Jim E. Kruse; Paul W. Kruse; W.
J. Rankin; Howard W. Kruse; Patricia I. Ryan; Dorothy
McCleod MacInerney,

*Defendants—Appellants*.

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:21-CV-487

---

Before King, Smith, and Elrod, *Circuit Judges*.

Jennifer Walker Elrod, *Circuit Judge*:

The Blue Bell Defendants appeal the district court's grant of summary judgment in favor of Discover Property & Casualty Insurance Company and the Travelers Indemnity Company of Connecticut. Because the complaint

in the underlying shareholder lawsuit does not allege any "occurrence" or seek "damages because of bodily injury," we AFFIRM.

I

This case concerns an insurance coverage dispute. In 2015, a *Listeria* outbreak led to a shut-down of Blue Bell factories and a nationwide recall of its products. Consequently, Blue Bell suffered a substantial financial loss. That financial loss led to a shareholder lawsuit against Blue Bell's directors and officers in the Delaware Court of Chancery. *Marchand v. Barnhill*, No. 2017-0586-JRS, 2018 WL 4657159 (Del. Ch. Sept. 27, 2018), *rev'd*, 212 A.3d 805 (Del. 2019). In that case, Jack L. Marchand II, a shareholder of Blue Bell Creameries USA, Inc., brought a derivative action against Blue Bell's directors and officers, alleging breach of fiduciary duties. Blue Bell Creameries USA, Inc. is a Delaware corporation, and the lawsuit is governed by Delaware law. *Id.*

Relevant here, a shareholder derivative action is "an action brought by a shareholder in the name or right of a corporation to redress an injury sustained by, or to enforce a duty owed to, the corporation." 13 Fletcher Cyc. Corp. § 5939. Under Delaware law, directors and officers "owe fiduciary duties of care and loyalty" to the corporation and its shareholders. *Gantler v. Stephens*, 965 A.2d 695, 708–09 (Del. 2009). Broadly speaking, the duty of loyalty requires fiduciaries "to advance the principal's interests and bars them from promoting their own interests at the principal's expense," whereas the duty of care "requires fiduciaries to exercise power competently." Holger Spamann, Scott Hirst & Gabriel Rauterberg, Corporations in 100 Pages 36 (3d ed. 2022).

Marchand, on behalf of Blue Bell, alleged that Blue Bell's officers and directors breached their fiduciary duties of care and loyalty by failing "to comply with regulations and establish controls." The complaint also alleged

No. 22-50842

that the directors and officers knew that Blue Bell's manufacturing plants had repeatedly and consistently tested positive for *Listeria* contamination, yet they continued to manufacture and distribute ice cream products in conscious disregard of the known risks. The complaint asserted that, "[a]s a result of the breaches of fiduciary duty alleged [in the complaint], the Company and its stockholders suffered injury in the amount of at least hundreds of millions of dollars."

As to liability, Marchand contended that the directors and officers are personally liable for the violations against Blue Bell and its shareholders. As compensation, he asked that the court award "Blue Bell the damages sustained by it as a result of the breaches of fiduciary duties." *See Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1036 (Del. 2004) ("Because a derivative suit is being brought on behalf of the corporation, the recovery, if any, must go to the corporation."). The complaint also requested that the court order "disgorgement and cancellation of stock in Blue Bell" owned by the directors and officers.

Three years after the shareholder lawsuit was filed, the directors and officers sought defense coverage under Blue Bell's Commercial General Liability insurance policies. In response, the Insurance Companies filed a lawsuit in this case, seeking a declaration that they have no duty to defend or indemnify[1] the directors and officers in relation to the shareholder lawsuit.

---

[1] Although the Insurance Companies seek declaratory judgment as to both their duty to defend and duty to indemnify, the parties have submitted a joint stipulation stating that "If the [district court] finds there is no duty to defend, it may also find there is no duty to indemnify, but otherwise the duty to indemnify will not be a subject of the Parties' motions."

No. 22-50842

The parties agree as to which policy governs.[2]  The applicable policy states that, in addition to the company, "'executive officers' and directors are insureds, but only with respect to their duties as [the company's] officers or directors."  As to the duty to indemnify, the insurer agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage.'"  The insurer also has a "duty to defend the insured against any 'suit' seeking those damages."  But the duties to defend and indemnify apply "only if the 'bodily injury' and 'property damage' is caused by an 'occurrence,'" which is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  Having stipulated that the policy was in effect at all relevant times, both parties filed a motion for summary judgment.

The district court granted summary judgment in favor of the Insurance Companies based on three independent grounds: (1) the directors and officers are not "insureds" under the policy when sued for "breach of a duty owed to the corporation"; (2) the shareholder lawsuit does not stem from either an "accident" or "occurrence" because the alleged misconducts were "undertaken with knowledge"; and (3) the shareholder suit does not allege damages "because of bodily injury."  The Blue Bell Defendants timely appealed.

II

This court reviews the grant of summary judgment *de novo*.  *Sweetin v. City of Texas City, Texas*, 48 F.4th 387, 391 (5th Cir. 2022).  "Summary

---

[2] The Blue Bell Entities were covered at all relevant times by several different Commercial General Liability policies.  Here, the parties have stipulated that all of those policies are identical in "all material respects to the 2015 Policy."  They also agreed that their cross-motions for summary judgment in this case would be governed by "the eight-corners rule [and] the terms and conditions of the 2015 Policy."

No. 22-50842

judgment is proper if the movant shows that there is no genuine dispute of material fact and that the movant is entitled to judgment as a matter of law." *Id.* "On cross-motions for summary judgment, we review each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010)

Texas law governs this diversity case. *See Bayle v. Allstate Ins. Co.,* 615 F.3d 350, 355 (5th Cir. 2010). However, the Supreme Court of Texas has not addressed the precise issues here. Thus, we must make an "*Erie* guess" as to how the Supreme Court of Texas would decide the questions before us. *Gilbane Bldg. Co. v. Admiral Ins. Co.*, 664 F.3d 589, 593 (5th Cir. 2011). An *Erie* guess must be based on: (1) decisions of the Supreme Court of Texas in analogous cases, (2) the rationales and analyses underlying the Supreme Court of Texas's decisions on related issues, (3) dicta by the Supreme Court of Texas, (4) lower state court decisions, (5) the general rule on the question, (6) the rulings of courts of other states to which Texas courts look when formulating substantive law, and (7) other available sources, such as treatises and legal commentaries. *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 564 (5th Cir. 2010) (citation and quotation marks omitted); *see Sanders v. Boeing Co.*, 68 F.4th 977, 981 (5th Cir. 2023).

Under Texas law, it is well established that the duty to defend and the duty to indemnify are "distinct and separate duties." *King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 187 (Tex. 2002). An "insurer may have a duty to defend but, eventually, no duty to indemnify." *Farmers Texas Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997). Likewise, an "insurer may have a duty to indemnify its insured even if the duty to defend never arises." *D.R. Horton-Texas, Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 741 (Tex. 2009).

No. 22-50842

As to the duty to defend, two documents are determinative: "the insurance policy and the third-party plaintiff's pleadings in the underlying litigation, which the court must review 'without regard to the truth or falsity of those allegations.'" *Amerisure*, 611 F.3d at 309 (quoting *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006)). In contrast, the "duty to indemnify depends on the facts proven and whether the damages caused by the actions or omissions proven are covered by the terms of the policy." *D.R. Horton-Texas*, 300 S.W.3d at 744. "Evidence is usually necessary in the coverage litigation to establish or refute an insurer's duty to indemnify." *Id.*

Here, only the duty to defend is at issue because the parties have stipulated that "If the [district court] finds there is no duty to defend, it may also find there is no duty to indemnify, but otherwise the duty to indemnify will not be a subject of the Parties' motions." Accordingly, we are confined by Texas's "eight-corners rule," which directs courts to determine an insurer's duty to defend based on: (1) the pleading against the insured in the underlying litigation and (2) the terms of the insurance policy. *Monroe Guar. Ins. Co. v. BITCO Gen. Ins. Corp.*, 640 S.W.3d 195, 199 (Tex. 2022).

"Insurance policy interpretation principles emphasize a policy's plain language in determining its intended coverage." *Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 131 (Tex. 2010). When there is ambiguity, we "resolv[e] any doubt in favor of coverage." *Allstate Ins. Co. v. Hallman*, 159 S.W.3d 640, 643 (Tex. 2005). But a contract "is not ambiguous simply because the parties to a lawsuit offer conflicting interpretations of the contract's provisions." *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 258 (Tex. 2017).

There are three issues on appeal. First, whether the directors and officers qualify as additional insureds in relation to the shareholder lawsuit.

No. 22-50842

Second, whether the alleged injuries in the shareholder lawsuit were caused by an "occurrence." And third, whether the shareholder lawsuit seeks "damages because of bodily injury." The district court answered "no" to all three questions. While we disagree with the district court's determination as to the first issue, we agree with its determination as to the second and third. We discuss each issue in turn.

### III

First, we address whether the directors and officers qualify as additional insureds in relation to the shareholder lawsuit. The policy states that Blue Bell's directors and officers are insureds, but "only with respect to their duties as [the company's] officers or directors."

The Insurance Companies argue, and the district court agreed, that the directors and officers do not qualify as additional insureds. The district court noted that the underlying allegation in the shareholder lawsuit is that the directors and officers "knowingly disregarded contamination risk and safety compliance" despite positive *Lysteria* tests and thus violated their fiduciary duties to the corporation. Given that the lawsuit is for breach of fiduciary duty, the district court rejected the proposition that the directors and officers were sued for actions "with respect to their duties" when it is alleged that they breached those very duties.

We disagree with the district court and hold that the directors and officers are "insureds" in relation to the shareholder lawsuit. At first glance, the argument adopted by the district court might sound like a logical tautology. After all, how can the directors and officers be "acting with respect to their duties" during the alleged violations of fiduciary duties?

Relevant here are two distinct meanings of the word "duty." On the one hand, "duty" can mean moral or legal "obligation" (*e.g.*, "duty to indemnify," "duty to defend"). On the other hand, it can also mean

something that is more analogous to "job" or "role" (*e.g.*, "the President's official duties," "the scope of his duties"). *Duty*, Oxford Dictionary & Thesaurus of Current English (2d ed. 2007) ("duty n. 1 responsibility, obligation, commitment. 2 job, task, assignment, mission, function, charge, role."). With this distinction in mind, it is possible that a director or officer breached his fiduciary duty (*i.e.*, legal obligation) while still acting with respect to his duties (*i.e.*, role) as a director or officer of the corporation. *Cf. Alexander v. Walker*, 435 S.W.3d 789, 789–90, 92 (Tex. 2014) (holding that a lawsuit against two sheriffs alleging "false arrest, false imprisonment, and malicious prosecution" was nonetheless "based on conduct within the general scope of the officers' employment").

To be sure, some violations are wholly unrelated or contrary to one's role such that they render the person effectively acting outside the scope of his role. *See, e.g.*, *Am. States Ins. Co. v. Synod of the Russian Orthodox Church Outside of Russia*, 170 F. App'x 869, 872 n.16 (5th Cir. 2006) (holding that monks who are accused of sexual molestation "do not qualify as insureds because clergy are considered insureds under the policy only 'with respect to their duties as such'"); *Farr v. Farm Bureau Ins. Co. of Nebraska*, 61 F.3d 677, 681 (8th Cir. 1995) (holding that corporate officers are not "carrying out their duties" when acting "in a manner that is antagonistic toward the corporation[]").

Here, however, as the Blue Bell Defendants noted, the shareholder did not allege that the directors and officers were taking any action that was outside the scope of "managing and operating the ice cream company." To the contrary, the complaint alleged that the directors and officers violated their fiduciary duties because they "continued the Company's production and distribution of ice-cream" when they should not have. While it is possible that they violated their fiduciary duties by failing to stop production

and distribution of ice-cream, their deciding to continue is plainly within the scope of their role.

Thus, based on the complaint, the alleged breach of fiduciary duty occurred while the directors and officers were acting "with respect to their duties" as such. Accordingly, we hold that they are "insureds" in relation to the shareholder lawsuit. *See Bitco Gen. Ins. Corp. v. Monroe Guar. Ins. Co.*, 31 F.4th 325, 329 (5th Cir. 2022) ("If a complaint alleges at least one cause of action that is 'potentially' within the policy's coverage, the insurer must defend the entire lawsuit."). In the alternative, there is at least sufficient uncertainty on this issue that we must choose an interpretation that favors coverage. *Id.*

IV

Next, we address whether the alleged injuries in the underlying lawsuit were caused by an "occurrence." Under the policy, the Insurance Companies have a duty to defend only if the alleged injury "is caused by an 'occurrence.'" And "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

Under Texas law, a person's act is not an accident "when [1] he commits an intentional act that [2] results in injuries that ordinarily follow from or could be reasonably anticipated from the intentional act." *Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 372 (5th Cir. 1998) (citing *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 827–28 (Tex. 1997)). We have noted that, in this context, "an intentional act and the intent to cause injury are two distinct concepts." *Id.* at 372 n.11. To illustrate, "the hunter who deliberately fires a gun at what he believes to be a deer but is actually a person" committed an "intentional" act, even though the harm was not intentional. *Trinity*, 945 S.W.2d at 828. As such, the "intentional acts"

No. 22-50842

requirement is concerned with the voluntariness of an action or omission, not the actor's intended outcome.

### A

We agree with the Insurance Companies and the district court that the alleged injuries were not caused by an "accident." As an initial matter, the intentional act requirement is easily met because there were no allegations that the directors or officers were acting involuntarily. To the contrary, the shareholder complaint alleged that they "knowingly disregarded contamination risk and safety compliance" and "willfully failed to exercise" their authority.

As to foreseeability, the shareholder complaint alleged several facts showing that the *Listeria* outbreak and the attendant financial harm "could be 'reasonably anticipated.'" *Trinity*, 945 S.W.2d at 828 (quoting *State Farm Fire & Casualty Co. v. S.S.*, 858 S.W.2d 374, 377 (Tex.1993)). For example, the complaint alleged that:

- In February 2015, Blue Bell received notification that the Texas Department of State Health Services had positive tests for *Listeria* in Blue Bell samples.
- In March 2015, health authorities reported that they suspected connection between human *Listeria* infections in Kansas and products made by Blue Bell's Brenham facility.
- In April 2015, the Centers for Disease Control and Prevention stated that tests indicated Blue Bell products from the manufacturing plants in Texas and Oklahoma were the source of a *Listeria* outbreak.
- Beginning in early 2013 and continuing into early 2015 . . ., Company management received increasingly frequent and continuing positive presumptive test results for *Listeria*.

No. 22-50842

- Positive tests also included repeated positive results from the Company's third-party laboratory in 2014, on consecutive samples.

Because our review is confined by the eight-corners rule, we assess the shareholder's allegations "without regard to the truth or falsity of those allegations." *GuideOne,* 197 S.W.3d at 308 (citations omitted). Having done so, we agree with the district court that, as alleged in the shareholder complaint, the breach of fiduciary duties stemmed from intentional acts, and the *Listeria* outbreak and the resulting financial harm were natural and probable consequences that could be reasonably anticipated.

B

On appeal, the Blue Bell Defendants offer three reasons for why the district court erred on this issue.

1

First, the Blue Bell Defendants assert that the district court ignored the additional, relevant policy language stating that accident "includ[es] continuous or repeated exposure to substantially the same general harmful conditions." The full definition reads as follows:

> "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

The Blue Bell Defendants argue that the second part of the definition is relevant because the shareholder lawsuit alleged that Blue Bell's plants "contained harmful conditions that allowed the *Listeria* to multiply through continuous exposure." They contend that because such an allegation signifies "continuous or repeated exposure to substantially the same general harmful conditions," the shareholder lawsuit alleged an "occurrence." In making this argument, the Blue Bell Defendants propose that we read the dependent clause (*i.e.*, "including continuous or repeated exposure to

No. 22-50842

substantially the same general harmful conditions") as extending the scope of the definition.

We refuse to do so, however, because that proposed interpretation is unpersuasive when we apply the whole-text canon. *See* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 167 (2012) ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."). As the Supreme Court of Texas observed, when the definitional language is read in context, it is evident that the function of the dependent clause is "to limit the number of occurrences an insured can claim for what the policy deems to be a single accident." *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 24 (Tex. 2008). Stated differently, the clause serves to ensure that "continuous or repeated exposure to substantially the same general harmful conditions" is not counted as *multiple* accidents or occurrences. "This limitation is sometimes important because the dollar limits of the policy include an aggregate limit and also a lower dollar limit per occurrence." *Id.* For example, the policy at issue here has an "Each Occurrence Limit" of $5,000,000.

Accordingly, we are unpersuaded by the Blue Bell Defendants' proposed interpretation. The dependent clause functions "to limit the number of occurrences," not to enlarge the scope of the meaning of "occurrence." *Id.*

2

Second, the Blue Bell Defendants argue that, because the policy includes an explicit exclusion for "bodily injury expected or intended," some

intentional conduct[3] must fall within the definition of "occurrence." Or else, they contend, the explicit exclusion would be rendered surplusage.

This argument is likewise unpersuasive because the "occurrence" / "accident" analysis is meaningfully different from the exclusion for "expected or intended" injuries. Under Texas law, whether the insured "expect[s] or intend[s] [the injury] is of no consequence to our determination of whether his actions were an 'accident.'" *Trinity*, 945 S.W.2d at 827–28. If the resulting injury ordinarily follows from or could be "reasonably anticipated" from the intentional act, then the act is not an accident, and thus not an occurrence. *Id.* at 828 (quoting *S.S.*, 858 S.W.2d at 377).

To the extent that the Supreme Court of Texas's understanding of "accident" overlaps with the intentional-injury exclusion, such an overlap should not be interpreted as an unintended surplusage because, as the Court recognized, "there is a [historical] relationship between the policy's definition of 'occurrence' and the exclusion for intentional acts." *King*, 85 S.W.3d at 192. That relationship arises from the fact that, before the 1986 modification to the Corporate General Liability Policy, the intentional-injury exception was subsumed within the definition of "occurrence." The definition of "occurrence" in pre-1986 CGL policies read:

> "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful condition, which results in bodily injury or property damage *neither expected nor intended from the standpoint of the insured.*

*Id.* at 192 (citing 16 Eric Mills Holmes, Holmes' Appleman On Insurance 2d § 117.5) (emphasis added). In 1986, however, "[t]he language 'expected or intended from the standpoint of the insured' was removed from the

---

[3] We understand the phrase "intentional conduct" in the Blue Bell Defendants' brief to mean a conduct that is intended to cause harm rather than mere voluntary action.

definition of 'occurrence' and reinserted as an exclusion from coverage." *Id.* The upshot of this historical fact is that any overlap between the definition of "occurrence" and the intentional-injury exclusion is a byproduct of historical practices rather than an unintended surplusage that ought to be excised.

3

Third, the Blue Bell Defendants assert that, even assuming *arguendo* that their previous arguments fail, coverage still exists because "there are not enough details in the Underlying Suit to conclude that a *Listeria* outbreak was an expected result of Appellants' actions." As support, they observe that the shareholder lawsuit fails to allege that "any regulatory authority took any drastic action to stop the production of ice cream, which one might expect if *Listeria* contamination was a natural and probable result of the conditions at the facilities." Given this deficiency, they conclude that the district court erred because the shareholder lawsuit "does not conclusively show scientifically that *Listeria* outbreak was the natural and probable result" of the alleged misconducts.

But the relevant question is not whether the complaint "conclusively show scientifically" that the injuries were probable. Under Texas law, so long as the underlying complaint alleged facts showing that the injuries "could be reasonably anticipated" to result from the misconduct, the complaint did not allege an accident. *Trinity*, 945 S.W.2d at 828 (citation and quotation marks omitted). "To hold otherwise would inappropriately enhance rather than minimize the moral hazard inherent in insurance." *Id.*; *see* Steven Shavell, *On Moral Hazard and Insurance*, 93 Q.J. Econ. 541, 541 (1979) ("Moral hazard refers here to the tendency of insurance protection to alter an individual's motive to prevent loss.").

Here, the underlying complaint alleged that the company management had received "increasingly frequent and continuing positive

presumptive test results for *Listeria*" from several governmental authorities and on multiple different occasions. And the complaint also alleged that the company had received "repeated positive results . . . on consecutive samples" from its own third-party laboratory. Because we assess the shareholder's allegations "without regard to [their] truth or falsity," we hold that the shareholder complaint does not allege any accident. *GuideOne*, 197 S.W.3d at 308.

Accordingly, we affirm the district court's determination that the shareholder complaint does not allege an "occurrence" under the terms of the policy.

## V

Finally, we address whether the shareholder lawsuit seeks "damages because of bodily injury." The insurance policy requires the insurer only to "pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage,'" and "to defend the insured against any 'suit' seeking those damages." The Blue Bell Defendants do not argue that there is any "property damage" at issue. And so, to maintain that the Insurance Companies are obligated to defend the shareholder lawsuit, the Blue Bell Defendants must show that the lawsuit seeks "damages because of bodily injury."

The Blue Bell Defendants argue that because the "damages contemplated by the [shareholder lawsuit] are factually attributable to bodily injuries suffered by Blue Bell customers," the damages are therefore "because of" bodily injury. In response, the Insurance Companies contend that the lawsuit does not seek damages "because of bodily injury" because the shareholder only seeks to recover "financial harm" that stemmed from breach of fiduciary duties. Like the district court, they observe that any reference to bodily injury is "merely informative" and "ancillary to the

No. 22-50842

dispute." And so, they conclude that the district court was correct in holding that the shareholder lawsuit does not seek damages because of bodily injury.

Because the Supreme Court of Texas has not addressed this precise issue, we must make an "*Erie* guess" as to how the Supreme Court of Texas would decide this issue. *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938). Relevant here, the Supreme Court of Texas has "repeatedly stressed the importance of uniformity when identical insurance provisions will necessarily be interpreted in various jurisdictions." *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 496–97 (Tex. 2008) (citation and quotation marks omitted). Thus, "[w]hen construing an insurance policy, [the Supreme Court of Texas is] mindful of other courts' interpretations of policy language that is identical or very similar to the policy language at issue." *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015).

This court has previously resolved the applicability of equivalent contractual language in similar factual situations under Louisiana and Mississippi law. *Preau v. St. Paul Fire & Marine Ins. Co.*, 645 F.3d 293 (5th Cir. 2011); *Nationwide Mut. Ins. Co. v. A.H. ex rel. Hunter*, 444 F. App'x 753 (5th Cir. 2011). In both cases, we rejected the same argument the Blue Bell Defendants assert here and concluded that the underlying lawsuit did not seek damages because of bodily injury.

In *Preau*, Dr. Preau argued that his insurance company owed him coverage for a misrepresentation lawsuit because that lawsuit requires him "to pay damages for bodily injury." 645 F.3d at 296. In that underlying lawsuit, Kadlec Medical Center sought damages against Dr. Preau for alleged misrepresentation in a letter of recommendation he wrote. Dr. Preau had written a letter of recommendation on behalf of Dr. Berry, and that letter failed to mention the fact that Dr. Berry had a history of drug abuse. In reliance on that letter, Kadlec Medical Center allowed Dr. Berry to practice

at its hospital. While practicing at the hospital, Dr. Berry failed to properly administer anesthesia to a patient because he was under the influence. As a result, the patient remains in a permanent vegetative state.

That patient brought a tort lawsuit against Kadlec Medical Center, seeking damages because of a bodily injury. The lawsuit settled for $7.5 million. To recover that loss, Kadlec then sued Dr. Preau and other defendants for negligent misrepresentation. The jury "awarded total damages of approximately $8,244,000, which represented the amount Kadlec had paid to settle the [tort lawsuit] plus the attorney's fees Kadlec incurred in defending that suit." *Id.* at 295. Dr. Preau was liable for a portion of that total damages.

Like the Blue Bell Defendants here, Dr. Preau argued that the lawsuit against him sought damages for bodily injury because the damages can ultimately be traced back to the patient's injury. And so, he contended that the damages were covered under his insurance policy. The *Preau* panel disagreed, holding that the "economic damages" sought against Dr. Preau are distinct from the damages that the patient sought for her bodily injuries. *Id.* at 296. And that is so even if "the amount of the damages . . . was directly related to the amount [the hospital] paid to defend and settle the [tort lawsuit]." *Id.*

The same is true here. The shareholder complaint seeks damages to compensate for Blue Bell's economic loss caused by its directors' and officers' breach of fiduciary duties. It does not seek to recover any damages on behalf of customers who may have suffered "bodily injury" from the *Lysteria* outbreak. Accordingly, we hold that the damages in the shareholder lawsuit are not covered under the plain terms of Blue Bell's insurance policy.

Moreover, *Preau* is not the only case supporting our conclusion. In *Nationwide*, for example, we applied our holding in *Preau* when addressing an

No. 22-50842

identical insurance provision under Mississippi law. *Nationwide Mut. Ins. Co. v. A.H. ex rel. Hunter*, 444 F. App'x 753, 755 (5th Cir. 2011). There, appellant Tri County argued that its insurer ought to indemnify the contempt judgment against it because the judgment sought "damages because of bodily injury." *Id.*

As background, an automobile accident victim obtained a $ 2 million tort judgment against John Hunter, a parent of the tortfeasor. To collect that judgment, the victim filed a writ of execution against Tri County, a company allegedly owned by John Hunter. Under a state statute, Tri County was required to provide a sworn statement within ten days of the extent of Hunter's interest in the company. But it failed to do so. Consequently, the state court held that Tri County had not complied with the statute and entered judgment for the entire $2 million.

To recover that loss, Tri County argued that the $2 million judgment was covered under its liability policy, which required the insurer to pay "sums that the insured becomes legally obligated to pay as damages because of 'bodily injury.'" *Id.* The *Nationwide* panel disagreed and held that "As in *Preau*, Tri County had not become 'legally obligated to pay' any damages as a result of a 'bodily injury.'" *Id.*

Likewise, the Sixth Circuit, the Ninth Circuit, the Supreme Court of Ohio, and the Supreme Court of Delaware have all addressed the meaning of a similar provision under similar facts and come to the same conclusion. *Westfield Nat'l Ins. Co. v. Quest Pharms., Inc.*, 57 F.4th 558, 565 (6th Cir. 2023) (holding that liability insurance covering claims for damages "because of bodily injury" provides coverage "only for claims requiring proof of an actual bodily injury, not all claims tangentially related to bodily injuries"); *id.* ("The claims, all of which are for economic damages, are simply beyond the policies' scope."); *Bliss Sequoia Ins. & Risk Advisors, Inc. v. Allied Prop. & Cas.*

*Ins. Co.*, 52 F.4th 417, 423 (9th Cir. 2022) (holding that "the phrase 'because of bodily injury' in [appellant's] insurance policy" does not automatically include any "lawsuit connected in some way to someone's injury."); *Acuity v. Masters Pharm., Inc.*, 205 N.E.3d 460, 472 (Ohio 2022) (holding that "the phrase 'damages because of bodily injury' in the policies before [the court] requires more than a tenuous connection between the alleged bodily injury sustained by a person and the damages sought"); *ACE Am. Ins. Co. v. Rite Aid Corp.*, 270 A.3d 239, 247 (Del. 2022) ("There must be more than some linkage between the personal injury and damages to recover 'because of' personal injury: namely, bodily injury to the plaintiff, and damages sought because of that specific bodily injury.").

Although these cases did not address the issue under Texas law, we nonetheless consider them highly persuasive because the Supreme Court of Texas has emphasized the importance of "other courts' interpretations of policy language that is identical or very similar to the policy language at issue." *RSUI Indem.*, 466 S.W.3d at 118.

On the other side, the Blue Bell Defendants do not present any analogous cases that have adopted their contrary interpretation. They cite a line of cases addressing lawsuits by cell phone consumers who suffered bodily injury because of radiation exposure, *see, e.g.*, *Samsung Elecs. Am., Inc. v. Fed. Ins. Co.*, 202 S.W.3d 372 (Tex. App.—Dallas 2006); *Ericsson, Inc. v. St. Paul Fire & Marine Ins. Co.*, 423 F. Supp. 2d 587 (N.D. Tex. 2006); *Voicestream Wireless Corp. v. Fed. Ins. Co.*, 112 F. App'x 553 (9th Cir. 2004), and two other cases addressing damages from "prescription drug abuse," *Cincinnati Ins. Co. v. H.D. Smith, L.L.C.*, 829 F.3d 771, 772 (7th Cir. 2016), and "increased emergency medical care," *Scottsdale Ins. Co. v. Nat. Shooting Sports Found.*, 226 F.3d 642, at *1 (5th Cir. 2000) (unpublished).

No. 22-50842

But none of those cases are analogous to the present case because they relied on a materially different provision that states:

> Damages because of bodily injury include damages claimed by any person or organization for care, loss of services or death resulting at any time from the bodily injury.

*Samsung*, 202 S.W.3d at 381; *Ericsson*, 423 F. Supp. 2d at 593; *Voicestream*, 112 F. App'x at 556 n.5; *Cincinnati Ins.*, 829 F.3d at 773; *Scottsdale*, 226 F.3d 642, at *2 n.3.

The court in *Ericsson*, for example, considered an underlying lawsuit where the plaintiffs requested damages in the form of "headsets" (or the funds to purchase them). 423 F. Supp. 2d at 589. These headsets helped reduce exposure to "radio frequency radiation," which had caused the plaintiffs "to sustain bodily injuries" in the form of cellular dysfunction. *Id*. Because the applicable policy stated that damages because of bodily injury included "damages . . . for care," the court in *Ericsson* observed that damages "in the form of a headset neither clearly falls within a policy provision, nor is clearly excluded by the text of the policy." *Id.* at 593-94 (quoting *Voicestream*, 112 F. App'x at 556). And so, the court concluded that the "ambiguity must be construed against [the insurer]." *Id.* Following the holding in *Ericsson*, the court in *Samsung* also determined that the cost of obtaining headsets to avoid radiation injury is damage "because of bodily injury" because it might be encompassed as damages "for care." *Samsung*, 202 S.W.3d at 381-82 (citing *Ericsson*, 423 F. Supp. 2d 587).

Similarly, in *Cincinnati*, the court considered an underlying suit that sought damages based on the cost of "addressing and combating the prescription drug abuse epidemic," which can likewise be considered as damages "for care." 829 F.3d at 774-75; *id.* at 775 (emphasizing that "the policy covers 'damages claimed by any person or organization for care . . . resulting . . . from the bodily injury.'"); *see also Scottsdale Ins.*, 226 F.3d 642,

No. 22-50842

at *1 (addressing damages for "increased emergency medical care" from bodily injuries). In all of these cases, the court determined that the damages sought in the underlying lawsuits might be encompassed within the inclusion of damages "for care, loss of services or death resulting at any time from the bodily injury."

Here, in contrast, there is no colorable argument that the shareholder lawsuit seeks damages "for care, loss of services or death" because it only seeks compensation for breach of fiduciary duties. Even the Blue Bell Defendants do not argue that there are any such damages at issue. As the Sixth Circuit observed, the inclusion of damages "for care, loss of services or death" was meant to include claims "like loss of consortium claims by family members, and subrogation claims." *Westfield*, 57 F.4th at 566.

Thus, in accordance with our holding in *Preau*, we hold that the economic damages sought in the shareholder lawsuit are not "damages because of bodily injury" under the plain language of the contract. 645 F.3d 293.

\*      \*      \*

While we disagree with the district court's determination as to whether the directors and officers are "insureds" in relation to the shareholder lawsuit, we agree with its determination that the complaint in the shareholder lawsuit does not allege any "occurrence" or seek "damages because of bodily injury." Because each issue is independently sufficient for affirmance, we AFFIRM the district court's grant of summary judgment in favor of the Insurance Companies.

# *United States Court of Appeals*
### FIFTH CIRCUIT
### OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

August 02, 2023

Mr. Philip Devlin
Western District of Texas, Austin
United States District Court
501 W. 5th Street
Austin, TX 78701-0000

     No. 22-50842   Discover Property Cslty v. Blue Bell
                 USDC No. 1:21-CV-487

Dear Mr. Devlin,

Enclosed is a copy of the judgment issued as the mandate and a
copy of the court's opinion.

                  Sincerely,

                  LYLE W. CAYCE, Clerk

                  By: _____
                  Mary Frances Yeager, Deputy Clerk
                  504-310-7686

cc:  Mr. James Stephen Barrick
     Mr. Douglas A. Daniels
     Ms. Courtney Elizabeth Ervin
     Ms. Amanda Laviage Goldstein
     Ms. Jillian Schumacher